IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Nicholas D. Portentoso, et. at.,                    Case No: 3:07CV00914

       Plaintiffs,

       v.                                              ORDER

Brian Kern, et. al.,

       Defendants

On March 28, 2007, Nicholas Portentoso filed a complaint on behalf of himself and his wife, Amy Portentoso. The Portentosos' claims arise from a search of their residence by members of the Seneca County District Office of the Ohio Adult Parole Authority ["the APA"] on July 19, 2006.[1] Named defendants include Parole Officers Brian Kern, Douglas Pummel, and Frances Shook; Senior Parole Officer Beverly Bradner; Parole Services Supervisor Jennifer Olsen; and the Ohio APA.

Pursuant to 42 U.S.C. §1983, the Portentosos' first, third, and fourth claims for relief seek monetary damages for alleged violations of rights secured by the Fourth and Fourteenth Amendments of the U.S. Constitution. The plaintiffs essentially contend that the defendants lacked

_____

[1] At all times relevant herein, Mr. Portentoso was serving a term of community control sanctions following his felony conviction in Seneca County Court of Common Pleas.

1

probable cause and conducted an illegal warrantless search of their residence, which resulted in the arrest, revocation, and subsequent incarceration of Mr. Portentoso.

Pursuant to 42 U.S.C. §1367, plaintiffs also seek supplemental jurisdiction in this court to assert five state law claims arising from the same case or controversy: 1) negligence for conducting the search without probable cause; 2) failure to properly train and supervise officers; 3) false imprisonment; 4) civil conspiracy; and 5) intentional infliction of emotional distress.

Defendants submit that the Portentosos should have brought the state law claims in the Ohio Court of Claims. Defendants also argue that I should deny the Portentosos' § 1983 claims on the merits. For the reasons that follow, I grant the defendants' motion to dismiss the Portentosos' state law claims for lack of jurisdiction and partially grant and partially deny the defendants' motion for summary judgment on the Portentosos' § 1983 claims [Doc. 34].

**Facts**

On March 9, 2005, a Seneca County Grand Jury returned a six count indictment against Mr. Portentoso for felonious criminal conduct occurring between February 7, 2003 and April 21, 2003. In November of the same year, Mr. Portentoso entered pleas of guilty to the amended first count of the indictment, attempted aggravated assault without a gun specification, and the fourth count, menacing by stalking. The criminal trial court filed an entry dismissing the remaining counts pursuant to the plea agreement.

On January 31, 2006, Seneca County Common Pleas Judge Steven Shuff sentenced Mr. Portentoso to five years of community control subject to the general supervision and control of the Ohio APA. Among other sanctions, Judge Shuff imposed a total of 120 days in jail, with credit for 48 days already served. Judge Shuff further notified Mr. Portentoso that a violation of the conditions

2

of supervision would result in the imposition of concurrent sentences of eleven months on count one and seventeen months on count four.

On February 10, 2006, Mr. Portentoso signed a conditions of supervision form. Two months later, on April 13, 2006, he signed a second conditions of supervision form, which included more specificity with regard to his financial obligations. Both forms included the following stipulations:

> 6. I will not purchase, possess, own, use, or have under my control, any firearms, ammunition, dangerous ordnance or weapons, including chemical agents, electronic devices used to immobilize, pyrotechnics and/or explosive devices.
>
> * * * *
>
> 9. I agree to a search, without warrant, of my person, my motor vehicle, or my place of residence by a supervising officer or other authorized representative of the Department of Rehabilitation and Correction at any time. *Notice: Pursuant to section 2967.131 of the Revised Code, Officers of the Adult Parole Authority may conduct warrantless searches of your person, your place of residence, your personal property, or any property which you have been given permission to use if they have reasonable grounds to believe that you are not abiding by the law or the terms and conditions of your supervision.*

(Def.'s Mot. for Summ. J. [Doc. 34], Exs. E & F at ¶¶ 6 & 9 (emphasis in originals).)

On July 19, 2006, Senior Parole Officer Bradner received a phone call from Libra Martin of Crime Victim Services indicating that the Mr. Portentoso's child had advised his ex-wife that there were weapons in the Portentosos' barn. Ms. Olsen, Parole Services Supervisor, instructed Ms. Bradner and the other defendants to go to the residence and search for weapons. The APA officers, including four of the defendants, went to the residence where they searched the barn, kennels, other out-buildings, and the house. The officers found a BB gun – which is not a firearm – in the barn. Finding rounds of ammunition in the house, the officers arrested Mr. Portentoso.

The parties disagree as to whether Mr. Portentoso consented to the search of his property. According to Ms. Bradner, on explaining the APA's purpose, Mr. Portentoso gave his verbal consent

3

to search "wherever." (Dep. of Beverly Bradner [Doc. 30] at p. 10.) Defendants also claim that following discovery of the BB gun in the barn, Mr. Portentoso specifically consented to a search of the house. In contrast, the Portentosos allege that neither of them consented to a search of any building.

After arresting Mr. Portentoso, the officers transported him to the Seneca County Jail, where he began to complain of chest pains. As a result of these complaints, the Seneca County Sheriff transported Mr. Portentoso to Tiffin-Mercy Hospital. Parole Officers Shook and Kern accompanied Mr. Portentoso to the hospital because he had not yet been booked at the county jail. That evening, a private ambulance service transported him to Toledo-St. Vincent Hospital. Mr. Portentoso remained in APA custody at the hospital until the state court granted a recognizance bond on July 20, 2006.

On July 24, 2006, Mr. Portentoso received notice of the alleged supervision violations. Three days later, Senior Parole Officer Bradner completed a violation report, including a supervision history and recommendation that the court revoke community control and impose sentence. On January 5, 2007, on submission of written summations by the parties, Judge Shuff found Mr. Portentoso to be in violation of his conditional supervision and, on March 27, 2007, sentenced him to seventeen months in prison.

On May 3, 2007, Mr. Portentoso filed a motion for judicial release. On June 18, 2007, after serving 84 days of incarceration, the court granted the motion and placed Mr. Portentoso back in community control supervision.

## Discussion

### 1. State Law Claims and the Eleventh Amendment

4

**A. Standard of Review**

The defendant individuals and APA request that I grant summary judgment to them on all of the claims. Their arguments for dismissal of the state law claims, however, amount to jurisdictional challenges. For this reason, I interpret them as a request for dismissal under Federal Rule of Civil Procedure 12(b)(1).[2] In the context of a Rule 12(b)(1) motion, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). A Rule 12(b)(1) motion to dismiss will be granted only if, taking as true all facts alleged by the plaintiff, the court is without subject matter jurisdiction to hear the claim.

**B. Claims Against State Institutions and Employees
Acting in Their Official Capacities**

Defendants assert that the Eleventh Amendment to the federal Constitution bars this court from hearing the Portentosos' state law claims.[3] To obtain relief on the state claims, defendants

---

[2]Even if I did not decide to interpret the defendants' motion in this manner, a "district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir.1999).

[3] The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of Any Foreign State.

U.S. Const. amend. XI.

The Sixth Circuit has explained that "[a]lthough the text of the amendment suggests that only citizens of another state are barred from suing a state in federal court, it has long been held that the amendment also prohibits suits by a citizen against his own state." *Hutsell v. Sayre*, 5 F.3d 996, 999 n.2 (6th Cir. 1993).

5

argue that the Portentosos should bring them in the Ohio Court of Claims pursuant to O.R.C.§ 2743.02(A)(1). *See Edelman v. Jordan*, 415 U.S. 651, 677 (1974) ("[A] federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief."); O.R.C. § 2743.02 ("the state hereby waives its immunity from liability . . . and consents to be sued, and have its liability determined, in the court of claims.").[4]

Absent an express waiver, the Eleventh Amendment bars all claims in federal court seeking retrospective monetary relief from the State's treasury. *Edelman*, *supra*, 415 U.S. at 677. The Amendment is therefore implicated whenever a public agency or institution is a defendant. Its application generally turns on whether 1) the institution in question is an arm of the state or is

---

[4]

The relevant portion of O.R.C. § 2743.02 [Waiver of immunity of state; personal immunity not available to state; state immunity for performance of public duty; hospitals of political subdivisions; collateral recovery; indemnification of personnel; actions against state personnel; third-party complaints and counterclaims] reads:

> (A)(1) The state hereby waives its immunity from liability, except as provided for the office of the state fire marshal in division (G)(1) of section 9.60 and division (B) of section 3737.221 of the Revised Code and subject to division (H) of this section, and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties, except that the determination of liability is subject to the limitations set forth in this chapter and, in the case of state universities or colleges, in section 3345.40 of the Revised Code, and except as provided in division (A)(2) or (3) of this section. To the extent that the state has previously consented to be sued, this chapter has no applicability.

> Except in the case of a civil action filed by the state, filing a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, which the filing party has against any officer or employee, as defined in section 109.36 of the Revised Code. The waiver shall be void if the court determines that the act or omission was manifestly outside the scope of the officer's or employee's office or employment or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

6

instead a political subdivision of the state; and 2) any monetary judgment would be paid out of the state treasury. *See Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993).

The bar extends to actions where the State is not a named party, but where the action is essentially one for recovery of money damages from the State, including suits against state officials acting in their official capacities. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70-71 (1989); *Hutsell, supra*, 5 F.3d at 999 (6th Cir. 1993); *see also Quern v. Jordan*, 440 U.S. 332, 337 (1979) ("[A] suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). It also extends to claims as to which a plaintiff asserts supplemental jurisdiction. *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 542 (2002) ("[W]e hold that § 1367(a)'s grant of jurisdiction does not extend to claims against non-consenting state defendants.")

Under O.R.C. §2743.02, Ohio "has not totally waived its sovereign immunity." *Ferrari v. Woodside Receiving Hosp.*, 624 F. Supp. 899, 902 (N.D. Ohio 1985). Instead, the state limited the forums in which plaintiffs could bring suit against it, directing such litigation to the Ohio Court of Claims. *Id.*; *see also Leaman v. Ohio Dept. of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 951 (6th Cir. 1987); *Ohio Inns, Inc. v. Nye*, 542 F.2d 673, 681 (6th Cir. 1976) ("There is no waiver with respect to action pending in federal or other state courts.").

The APA is unquestionably an arm of the state and not a political subdivision thereof. Furthermore, there is no dispute that plaintiffs' claim for money damages against the APA is a claim against the state treasury. As a result, the APA and the individual defendants

> to the extent they have been named in their official capacities, cannot be sued in this Court, given that they are mere divisions or officials of the State and any funds which would be obligated to satisfy a judgment against them in such capacity would come from the treasury of the State.

*Johnson v. Wolgemuth*, 257 F. Supp. 2d 1013, 1017 (S.D. Ohio 2003) (sustaining dismissal of claims against the Ohio Department of Natural Resources and its employees).

Thus, the Eleventh Amendment bars the Portentosos' state claims against the APA and the individual defendants in their official capacities.

### C. Claims Against State Employees
### Acting in Their Individual Capacities

While the Eleventh Amendment does not bar suits for money damages against state officers and employees in their individual capacities, such civil actions "shall first be filed against the state in the court of claims, which has exclusive original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code." O.R.C. § 2743.02(F).[5]

Section 9.86, in turn, explains that:

Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any

---

[5] O.R.C. § 2743.02(F) in its entirety reads:

A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action. The officer or employee may participate in the immunity determination proceeding before the court of claims to determine whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code.

The filing of a claim against an officer or employee under this division tolls the running of the applicable statute of limitations until the court of claims determines whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code.

8

civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

The Supreme Court of Ohio and the Sixth Circuit have interpreted these statutes to vest the Ohio Court of Claims with exclusive jurisdiction to determine whether a state employee is immune from suit. *See, e.g.*, *Cameron v. Children's Hosp. Med. Ctr.*, 131 F.3d 1167, 1170 (6th Cir. 1997) ("If the defendants are state 'employees' for purposes of this case, then the plaintiffs must present their claim to the Ohio Court of Claims before proceeding in a court of general jurisdiction."); *Sanquily v. Court of Common Pleas of Lucas County*, 60 Ohio St. 3d 78, 80 (1991) ("R.C. 2743.02(F) vests exclusive original jurisdiction in the Court of Claims to determine whether [the state employee] is immune from suit."); *see also Parks v. Wilkins*, 716 F. Supp. 1028, 1030 (S.D. Ohio 1988) ("Because this provision of the Ohio Court of Claims Act is so intimately bound up with Ohio's conditional waiver of its sovereign immunity, this Court has little doubt that § 2743.02(F) is 'substantive' law for *Erie* purposes, and must be applied by this Court to plaintiff's pendent state law claim."); *Gumpl v. Bost*, 81 Ohio App. 3d 370, 374 (1992) ("Even though the state was not named as a party and no recovery was sought from the state, R.C. 2743.02(F) requires a determination of appellees' immunity by the Court of Claims.").

The Ohio Court of Claims has not determined whether the claims against the individual defendants – regardless of the capacity in which the Portentosos named those defendants – were the result of actions that were "manifestly outside the scope of [the individual defendants'] employment or official responsibilities," or whether they "acted with malicious purpose, in bad faith, or in a wanton or reckless manner." O.R.C. § 2743.02(F); *see also Johnson*, *supra*, 257 F.Supp. 2d at 1017-

9

18. As a result, I dismiss the state claims against the defendants in their individual capacities pursuant to 12(b)(1).[6]

## 2. Federal Claims

### A. Standard of Review

Fed. R. Civ. P. 56(c), which sets forth the procedure for addressing a summary judgment motion, states, in part:

> [t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

The Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). Inferences drawn from underlying facts contained in such materials must also be considered in a light most favorable to the party opposing the motion. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n*, 630 F.2d 1155, 1158 (6th Cir. 1980).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine if there are genuine issues of fact to be tried. *Poller v. Columbia Broadcasting Sys.*,

---

[6]

I note that these procedural requirements place the plaintiffs in a bind. By submitting state claims to the Ohio Court of Claims, the Portentosos risk losing their remaining § 1983 claim (see Section C, below) because, according to O.R.C. § 2743.02(A)(1), "filing a civil action in the court of claims results in a complete waiver of any cause of action based on the same act or omission, which the filing party has against any state officer or employee." *See Leaman v. Ohio Dept. of Mental Retardation & Dev. Disabilities*; 825 F.2d 946, 952 (6th Cir. 1987) ("In providing that an election to sue the state in the Court of Claims results in a complete waiver of any cognate cause of action against individual state officers of employees, the Ohio legislature clearly provided for waiver of federal causes of action, as well as causes of action based upon state law."); *Ferrari v. Woodside Receiving Hosp.*, 624 F. Supp 899, 902-03 (N.D. Ohio 1985) (noting that plaintiff's action in the Court of Claims triggered O.R.C. § 2743.02(A)(1)'s waiver clause, forcing the federal court to dismiss plaintiff's related §1983 claims). Such are the challenges and flaws of our federal system.

368 U.S. 464 (1962). Summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. 317, 322; *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence in which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," a court may decide the legal issue and grant summary judgment. *Id.* at 249-50.

### B. Ohio Adult Parole Authority is Not a Proper Party

The Complaint improperly names the Ohio APA as a defendant. The relevant portion of 42 U.S.C. §1983, states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . .

A state agency is not a "person" that can be liable for money damages under §1983. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 65-66 (1989). As such, I completely dismiss the APA from this action.

### C. Plaintiffs' Illegal Search Claims

Pursuant to 42 U.S.C. §1983, the Portentosos' first and third claims for relief seek monetary damages for alleged violations, occurring during the search of their premises, of rights secured by the Fourth and Fourteenth Amendments to the federal Constitution. Plaintiffs contend that the

11

Defendants lacked probable cause and conducted a warrantless and illegal search of their residence. Defendants argue that these claims are without merit as the reasonable suspicion standard applies to searches of individuals under conditional supervision and the search of the Portentosos' property met this standard.[7]

In contrast to the state claims, I have jurisdiction over plaintiffs' federal claims. *Gumpl*, *supra*, 81 Ohio App. 3d at 374. This is because the Ohio Court of Claims only has authority to decide immunity questions as to claims arising under state law. *Conley v. Shearer*, 64 Ohio St. 3d 284, 292 (Ohio 1992) ("R.C. 9.86 expressly limits its coverage to 'any civil action that arises under *the law of this state* . . .'") (quoting O.R.C. § 986); *see also Howlett v. Rose*, 496 U.S. 356, 376 (1990) ("conduct by persons acting under color of state law which is wrongful under 41 U.S.C. § 1983 . . . cannot be immunized by state law."); *Gumpl*, *supra*, 81 Ohio App. 3d at 374-75 (explaining the distinctions between federal and Ohio immunity law).

Contrary to the Portentosos' assertions, the probable cause requirement for issuance of a search warrant is not the applicable standard when the state searches premises inhabited by someone

---

[7]

Though the issue is not raised by the parties, the fact that there was a revocation proceeding implicates the impact, if any, of Mr. Portentoso's failure to assert his Fourth Amendment claims at an earlier date. *See McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005) ("As a general rule, a federal civil action brought under § 1983 is not a venue for re-litigating issues that were decided in a prior state criminal case."). Res judicata, also known as claim preclusion, bars "[a] claim of right or cause of action which could have been, but was not, litigated in a prior lawsuit between the same two parties." *Lupo v. Voinovich*, 858 F. Supp 699, 703 (S.D. Ohio 1994); *see also Nat'l Amusements, Inc. v. City of Springdale*, 53 Ohio St. 3d 60, 62 (Ohio 1990). However, Mr. Portentoso is not precluded because, in Ohio, a criminal defendant cannot raise a Fourth Amendment challenge in his revocation hearing. *State ex rel. Wright v. Ohio Adult Parole Auth.*, 75 Ohio St. 3d 82, 91 (Ohio 1996) ("We hold that evidence obtained through an unreasonable or unlawful search and seizure is generally admissible in probation and/or parole revocation proceedings."); *Blackwell v. Gorman*, 870 N.E. 2d 1238, 1249 (Ohio Com. Pl. 2007) ("[T]he res judicata doctrine does not bar litigation of a claim that could not have been asserted in a prior lawsuit.").

12

on parole or supervisory probation. Instead, under *Griffin v. Wisconsin*, 483 U.S. 868, 876-78 (1987)*,* the state actors require no more than "reasonable suspicion" of a violation of the terms of supervision to conduct a warrantless search of the offender's residence. *See U.S. v. Payne*, 181 F.3d 781, 787-88 (6th Cir. 1999) (explaining that the "special need" analysis of *Griffin* applies in the probation and parole contexts); *see also State v. Braxton*, 102 Ohio App.3d 28, 36 (1995) (applying *Griffin*; "[t]he Fourth Amendment protection against unreasonable searches and seizures is less stringent  .  .  .  when applied to probationers or parolees if a warrantless search is conducted pursuant to a valid state regulation").

In *Griffin*, the United States Supreme Court recognized that "[a] State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, [] presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." 483 U.S. at 873-74. Citing the "special need" of states to closely supervise probationers to assure the observance of probation conditions, the Court rejected a Fourth Amendment challenge to a Wisconsin regulation authorizing the warrantless search of a probationer's home when a probation officer has "reasonable grounds" to suspect the presence of contraband. *Id.* at 870-76.

It is well-established law that the "special need" of Ohio's probation system similarly justifies a departure from standard Fourth Amendment jurisprudence. O.R.C. § 2967.131.[8] In *U.S.*

_____

[8]The relevant portion of O.R.C. § 2967.131 [Released individuals to abide by firearms and drug laws; searches and random drug testing authorized] reads:

(C) During the period of a conditional pardon or parole, of transitional control, or of another form of authorized release from confinement in a state correctional institution that is granted to an individual and that involves the placement of the individual under the supervision of the adult parole authority, and during a period

13

*v. Payne*, 181 F.3d 781, 786 (6th Cir. 1999), the Sixth Circuit stated that "a state statute authorizing searches of parolees on grounds that satisfy the federal standard for reasonable suspicion would be constitutional." Thereafter, the court held in *U.S. v. Loney*, 331 F.3d 516, 521 (6th Cir. 2003), "that Ohio's 'reasonable grounds' standard mirrors the reasonable grounds standard first discussed in *Griffin*, and later characterized as the federal reasonable suspicion standard by this Court in *Payne*."

When a defendant, usually as a condition of probation or parole, has provided the state with written consent allowing the state to conduct warrantless searches, there is an even stronger case for applying reasonable suspicion rather than probable cause. Furthermore, state authorities routinely impose written consent forms as a condition of community supervision and the Sixth Circuit has

---

of post-release control of a felon imposed under section 2967.28 of the Revised Code, authorized field officers of the authority who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant, the person of the individual or felon, the place of residence of the individual or felon, and a motor vehicle, another item of tangible or intangible personal property, or other real property in which the individual or felon has a right, title, or interest or for which the individual or felon has the express or implied permission of a person with a right, title, or interest to use, occupy, or possess, if the field officers have reasonable grounds to believe that the individual or felon has left the state, is not abiding by the law, or otherwise is not complying with the terms and conditions of the individual's or felon's conditional pardon, parole, transitional control, other form of authorized release, or post-release control. The authority shall provide each individual who is granted a conditional pardon or parole, transitional control, or another form of authorized release from confinement in a state correctional institution and each felon who is under post-release control with a written notice that informs the individual or felon that authorized field officers of the authority who are engaged within the scope of their supervisory duties or responsibilities may conduct those types of searches during the period of the conditional pardon, parole, transitional control, other form of authorized release, or post-release control if they have reasonable grounds to believe that the individual or felon has left the state, is not abiding by the law, or otherwise is not complying with the terms and conditions of the individual's or felon's conditional pardon, parole, transitional control, other form of authorized release, or post-release control.

14

upheld this practice as an exception to the warrant requirement. *Id.* at 523 n.4; *Braxton*, *supra*, 102 Ohio App. 3d at 37 ("a consensual search pursuant to such conditions and regulations [as contained in a conditional release form] has been upheld as being an exception to the warrant requirement.")[9]

Applying the reasonable grounds standard – the legal equivalent, as noted, of the "reasonable suspicion" standard – set forth in the conditions of supervision, I conclude that the APA officers had authority to search the barn. The plaintiff's ex-wife had reported that her daughter told her there was a gun there. That tip, considering its origin and specificity, sufficed to enable the officers to search for a firearm in that building.

The information did not, however, raise a reasonable suspicion justifying the officers' search of the house or other buildings on the property. The tip that Ms. Martin provided Officer Bradner was specific to the barn. It proved to be substantially true when the officers found the BB gun; though not a prohibited firearm, a BB gun sufficiently resembles such a weapon to have caused the daughter's report to her mother.

---

[9]The defendants' support a broader argument – that the state may conduct a warrantless search without requiring either probable cause *or* reasonable suspicion – by citing the Supreme Court of Ohio's decision in *State v. Benton*, 82 Ohio St.3d 316 (1998). This citation is misleading. In *Benton*, the court upheld a warrantless search conducted without reasonable suspicion because the defendant had signed a written consent to search as a condition of supervision. The court noted, however, that "four months after the defendant agreed to the conditions of his supervision" the Ohio General Assembly enacted R.C. 2967.131(B) which "requires field officers conducting a search to have reasonable grounds to believe that the releasee is not abiding by the law or otherwise is not complying with the terms and conditions of his or her conditional release." *Id.* at 319 n.3. The new law did not apply to Benton because it did not exist when he signed his consent form. *Id.* However, the dissent in that case noted the impact of R.C. 2967.131(B). *Id.* at 323 (Pfeifer, J. dissenting) (" . . . the enactment of R.C. 2967.13(B) limits the scope of this decisions."); *see also U.S. v. Loney*, 331 F.3d 516, 521 (6th Cir. 2003) (analyzing O.R.C. § 2967.131).

15

Once the officers completed their search of the barn, they had no basis on which to suspect – much less reasonably to suspect – that a firearm was located in the house. The tip was specific as to location, and gave no basis for searching anywhere else.

This leaves only consent as a possible basis for entering and searching the house. But Mr. Portentoso's consent remains a disputed fact for decision by a jury. The defendants' motion for summary judgment shall be denied with regard to the plaintiffs' Fourth Amendment claim as to the defendants' search of their residence.[10]

### D. Plaintiffs' False Arrest Claims

Pursuant to 42 U.S.C. §1983, the Portentosos' first and fourth claims for relief seek monetary damages for alleged violations of rights secured by the Fourth and Fourteenth Amendments that resulted from the arrest of Mr. Portentoso. The plaintiffs allege that the arrest that followed the search of the Portentosos' property was illegal due to the lack of a warrant and probable cause.

The Fourth Amendment "requires the [s]tates to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan*, 443 U.S. 137, 142 (1979). In the case of probationer who has already been convicted of a crime and is serving a period of conditional supervision, probable cause that the probationer has violated a condition of his probation can meet this requirement. *See, e.g.*, *U.S. v. Murguia-Oliveros*, 421 F.3d 951, 952 (9th Cir. 2005) ("Under the terms of the applicable statute [18 U.S.C. § 3606], a released

---

[10] Defendants are not immune from suit for their search of the premises other than the barn. Absent consent, they had no basis for searching anywhere else. No legal doctrine is better settled in Fourth Amendment jurisprudence than the requirement that officers can enter a private residence only on the basis of lawful cause. No reasonable officer would not know that doctrine. Thus, they cannot plausibly claim immunity in light of *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). *See also Saucier v. Katz,* 533 U.S. 194 (2001).

16

defendant can be arrested without a warrant during the period of supervised release for violating the terms of that supervised release."); *U.S. v. Hondras*, 296 F.3d 601, 602 (7th Cir. 2002) (citing 18 U.S.C. § 3606's provision that a court supervising a releasee may issue an arrest warrant "if probable cause exists to believe that a person has violated the conditions of his release" and noting that "no constitutional concern exists here."); *U.S. v. Reyes*, 283 F.3d 446, 470 n.14 (2d Cir. 2002) ("We recognize, of course, that a probation officer is empowered by law to arrest a probationer or a convicted person serving a term of supervised release, with or without a warrant, '[i]f there is probable cause to believe that [the offender] has violated a condition of his probation or release.'") (quoting 18 U.S.C. §3606); *see also* O.R.C.§ 2951.08(A) (" [A]ny peace officer may arrest the person under a community control sanction without a warrant if the peace officer has reasonable ground to believe that the person has violated or is violating any of the following that is a condition of the person's community control sanction .  .  . .").

When the defendant officers found the ammunition, they had persuasive physical evidence that Mr. Portentoso was in violation of clause six of his conditions of supervision. He "does not – and cannot – dispute that probable cause existed to believe that he violated the conditions of his supervised release." *Hondras*, *supra*, 296 F.3d at 602. Given these facts, I find that there is no genuine issue of material fact regarding the legality of Mr. Portentoso's arrest. The defendants' motion for summary judgment on plaintiffs' claims for false arrest and any civil rights violations related thereto shall be granted.

### 3. Additional Issues

### A. Mrs. Portentoso's Claim

17

Both parties misconstrue the application of Fourth Amendment jurisprudence to a co-resident of a searched property. Mrs. Portentoso may have suffered an injury when the APA searched the property; she is an occupant of the property and shares its occupancy – and the attendant rights arising under the Fourth Amendment. Her lack of consent, however, does not automatically invalidate the search if Mr. Portentoso consented to the search. *U.S. V. Matlock*, 415 U.S. 164, 170 (1974) ("[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared.").

The Supreme Court's recent opinion in *Georgia v. Randolph*, 547 U.S. 103, 114-15 (2006), is not to the contrary. In that decision, the Court held that a cooperative occupant's consent to a warrantless search could not uphold a search in the face of a non-cooperative occupant's clear objection. Mrs. Portentoso was not present when the search in question began, and there is no evidence that she objected to the search after she arrived.

For these reasons, while Mrs. Portentoso is a proper party to this case, the validity of her remaining claims rely on the same facts as her husband's claims – whether Mr. Portentoso consented to the search of his property beyond the barn. Summary judgment as to her search claim shall be denied.

## B. Objectives of the Search

Although no new criminal charges stemmed from this search, plaintiffs appear to argue that Mr. Portentoso's conditions of supervision form failed to properly warn him that the APA would be able to search him without probable cause or a warrant in relation to violations of crimes. Because Mr. Portentoso's possession of a firearm would be a separate crime (in addition to being

18

a parole violation) the plaintiffs assert that a search knowingly seeking to find a firearm required a warrant.

Plaintiffs cite the Sixth Circuit's holding in *U.S. v. Carnes*, 309 F.3d 950 (6th Cir. 2002) to support this argument. In the *Carnes* case, the government searched the defendant parolee's place of arrest (his girlfriend's residence) without a warrant and seized numerous tapes which it used to prosecute Carnes for illegally intercepting wire communications. The government argued that the search did not require a warrant "because Carnes was a parolee, [and] the special needs of law enforcement allowed the government to seize and use the tapes without a warrant or probable cause." *Id.* at 959. Yet in *Carnes*, the government not only failed to use the tapes in the defendant's parole hearing – it did not even listen to the tapes until after the hearing. In rejecting the government's claim, the court concluded that there was "no evidence that the officers who seized the six tapes .   .   . were motivated by a desire to establish a violation" of Carnes's parole agreement. Rather, the government's initial failure to listen to the tapes suggested "some other motiviation." *Id.* at 961.

These facts stand in sharp contrast to the current case, in which the government used the seized items as evidence of a parole violation and did not prosecute the defendant for a separate criminal violation. While the search of a parolee's residence may yield evidence for numerous prosecutions, in this case, the surrounding facts and eventual legal outcome inform my analysis of the intent of the APA and its officers.

The defendants had supervisory objectives in conducting the search. The officers only seized items that indicated parole violations and only used those items to argue that Mr. Portentoso violated his conditions of supervision. Therefore, *Carnes* provides no basis for deeming the search a violation

19

of the Portentosos' constitutional rights and I refuse to hold otherwise merely because the search *could* have led to prosecutions for additional crimes. *See Loney*, *supra*, 331 F.3d at 523; *cf. State v. Benton*, 82 Ohio St. 3d 316, 320 (1998) ("The purpose of an unexpected, unproved search of defendant is to ascertain whether he is complying with the terms of probation; to determine whether or not he disobeys the law, but also whether he obeys the law.") (quoting *In re Anthony S.*, 6 Cal. Rptr. 2d 214, 215 n.1 (Cal. Ct. App. 1992)).

### Conclusion

For the foregoing reasons, it is therefore,

ORDERED THAT

1. Defendants' motion to dismiss state claims for lack of jurisdiction be, and the same hereby is granted; and

2. Defendants' motion for summary judgment be, and same hereby is granted, with the exception of plaintiffs' claims arising from the search of their premises beyond that conducted of their barn; as to that claim, the defendants' motion is denied.

So ordered.

<u>s/James G. Carr</u>
James G. Carr
Chief Judge

20